FILED
DEC 28 2007
DEC 28 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**JUDGE GETTLEMAN**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. **07CR 0869** |
| | ) | |
| v. | ) | |
| | ) | Violations: Title 18, United States |
| SOUTH SHORE SUPERMARKET, INC. | ) | Code, Sections 1343 and 2 |
| | ) | |
| | ) | **INFORMATION** |

## COUNT ONE

**MAGISTRATE JUDGE NOLAN**

The UNITED STATES ATTORNEY charges:

1. At times relevant to this Information:

    a. The United States Department of Agriculture ("USDA"), Food and Nutrition Service ("FNS"), was a federal agency responsible for the administration and implementation of the Food Stamp Program throughout the United States. The Food Stamp Program ("FSP") provided assistance to needy individuals in the form of food stamp coupons, and later through Electronic Benefit Transfers, which were known in Illinois as "Link card benefits" to be exchanged or redeemed for approved food products.

    b. The Link card system was developed to enable government agencies to deliver FSP benefits to recipients through the use of electronic transfers, much like debit and credit cards, to eliminate actual, hard copy food stamp coupons. The redemption aspect of the Illinois Link card system was operated under contract by Northrop-Gruman through an affiliate in Austin, Texas.

    c. To become eligible to participate in the Food Stamp Program, candidate store owners in the Chicago area were required to complete, sign and submit to the Chicago Field Office of the USDA a Food Stamp Program Application for Stores, form FCS 252. Upon completion of the application process, if the store and its owners qualified, the store was authorized to redeem food

stamp benefits from the USDA to participate in the program.

  d. Authorized store owners were required to report to the USDA changes in food sales, inventory, stock, size of the store, as well as change of location, name, and ownership.

  e. Authorized stores could lawfully accept food stamps or Link card benefits only for eligible food items and not for items such as alcoholic beverages, tobacco, hot foods, ready-to-eat foods, lunch counter items, vitamins, medicines, cosmetics, cleaning materials, or pet foods.

  f. Prior to receiving authorization to participate in the Food Stamp Program, the applicant store owner or his/her representative was required to participate in an interview conducted by the USDA. During the interview, the applicant store owner was informed of prohibitions against unlawfully purchasing and redeeming food stamps or Link card benefits, and selling ineligible items for benefits.

  g. Through the Link card system, benefits were automatically credited to the Illinois recipient's Link card each month. In order for recipients to access their electronic benefits to purchase eligible food items, they were required to present their Link card to a retailer authorized by the USDA. Unauthorized retailers could not accept Link cards. The Link cards could only be processed by a specially-provided and manufactured point-of-sale terminal designed to accept Link cards (hereinafter the "Link card machine"). After "swiping" the Link card through the Link card machine, the recipient entered a personal identification number ("PIN") into the machine's keypad to complete the transaction. The Link card machine records the Link card account number, the date and time of the transaction, and the amount debited from the recipient's Link card.

  h. Once the necessary information was received by the Link card machine, it automatically called a 1-800 telephone number, which dialed into a computer system located in Austin, Texas. Through this contact, the Link card transaction was either approved or rejected, the

result was then communicated to the Link card machine, again via the open phone line. If the Link card transaction was approved, funds would be transferred or caused to be transferred into the designated bank account of the authorized retailer to whom the Link card machine was registered. The transfer of funds normally took place on the next business day following the approved Link card transaction.

   i.  In particular, at the end of the business day the computer system operated in Austin, Texas would total all approved transactions for each Illinois retailer during that retailer's designated business day. From that total an electronic Automated Clearing House ("ACH") file would be created containing the identification number, bank account number and routing number for the retailer's designated bank, a file header indicating it is an EBT payment, and the amount to credit. This file would then be sent electronically, by wire, from Austin, Texas to a bank located within the State of Illinois. That bank would subsequently disburse the retailer's Link reimbursements to the store owner's account.

   j.  Individual A was the incorporator, owner and president of SOUTH SHORE SUPERMARKET, INC., a family-owned supermarket located at 1856 East 79th Street, Chicago, Illinois (hereinafter, "SOUTH SHORE"). SOUTH SHORE was a retailer of, among other things, specialty meat products and produce.

   k.  Individual B was employed as the store manager of SOUTH SHORE and in that capacity had primary on-site responsibility for the day-to-day operations of the store.

   l.  On or about May 18, 1994, Individual A designated her store manager, Individual B, as the representative of SOUTH SORE for purposes of obtaining authorization for SOUTH SHORE's participation in the food stamp program, through, among other things, attending retailer training and being interviewed as part of the food stamp program application process.

m.  On or about May 18, 1994, INDIVIDUAL B, in his capacity as Store Manager and the designated representative of SOUTH SHORE, attended a food stamp program retailer training orientation held by USDA-FNS during which INDIVIDUAL B was instructed in and acknowledged that (1) he reviewed and understood the Food Stamp Program rules and regulations; (2) he understood that exchanging cash for food stamp benefits was illegal and could result in permanent disqualification from the Food Stamp Program as well as criminal prosecution; and (3) it was his responsibility to ensure that all full-time and part-time employees were properly instructed regarding the Food Stamp Program regulations.

n.  On or about May 25, 1994, in further response to the initiation by SOUTH SHORE of the administrative process for securing authorization for SOUTH SHORE to participate in the food stamp program, a representative of the FNS conducted a store visit and interviewed INDIVIDUAL B on the premises of SOUTH SHORE. During the interview, the visiting representative of the FNS reviewed with INDIVIDUAL A various food stamp program regulations, including, among others, the ban on trafficking food stamp benefits for cash and the selling ineligible items for food stamp benefits, as well as the possible penalties for violating those regulations, including among other things, administrative and civil sanctions, as well as possible criminal prosecution.

o.  On or about May 26, 1994, Individual A prepared and caused to be prepared and formally submitted to the USDA, a Food Stamp Program Application for Stores on behalf of SOUTH SHORE. On the application, Individual A represented and caused to be represented to the USDA, among other things, that: (1) SOUTH SHORE was a privately-owned company, owned by Individual A; (2) Individual A was president of SOUTH SHORE; (3) the estimated annual gross sales at SOUTH SHORE were $360,000, which included estimated annual FSP "eligible food sales"

of approximately $280,000; and (4) the bank account which SOUTH SHORE designated to receive food stamp redemptions was held at Marquette National Bank, located in Chicago, Illinois.

p.  On or about July 7, 1994, SOUTH SHORE was authorized to accept USDA food stamp benefits and received a USDA-FNS authorization number.

q.  On or about July 29, 1997, INDIVIDUAL A prepared and caused to be prepared, and submitted to USDA for reauthorization, a Food Stamp Program Application for Stores, Form FCS-252R, on behalf of SOUTH SHORE. On the form, Individual A represented and caused to be represented to the USDA, among other things, that: (1) SOUTH SHORE was a privately-owned company, owned by Individual A; (2) Individual A was president of SOUTH SHORE; (3) the annual gross sales at SOUTH SHORE were $774,609, which included annual FSP "eligible food sales" of approximately $619,687; and (4) the bank account which SOUTH SHORE designated to receive food stamp redemptions was held at Marquette National Bank, located in Chicago, Illinois.

r.  On or about May 10, 1998, INDIVIDUAL A prepared and caused to be prepared, and submitted to USDA for reauthorization, a Food Stamp Program Application for Stores, Form FCS-252R, on behalf of SOUTH SHORE. On the form, Individual A represented and caused to be represented to the USDA, among other things, that: (1) SOUTH SHORE was a privately-owned company, owned by Individual A; (2) Individual A was president of SOUTH SHORE; (3) the annual gross sales at SOUTH SHORE were $768,591, which included annual FSP "eligible food sales" of approximately $757,375; and (4) the bank account which SOUTH SHORE designated to receive food stamp redemptions was held at Marquette National Bank, located in Chicago, Illinois.

s.  On or about December 20, 1999, INDIVIDUAL A prepared and caused to be prepared, and submitted to USDA for reauthorization, a Food Stamp Program Application for Stores,

Form FCS-252R, on behalf of SOUTH SHORE. On the form, Individual A represented and caused to be represented to the USDA, among other things, that: (1) SOUTH SHORE was a privately-owned company, owned by Individual A; (2) Individual A was president of SOUTH SHORE; (3) the annual gross sales at SOUTH SHORE were $950,361, which included annual FSP "eligible food sales" of approximately $909,443; and (4) the bank account which SOUTH SHORE designated to receive food stamp redemptions was held at Marquette National Bank, located in Chicago, Illinois.

    t. From no later than on or about May 17, 1994 and continuing through at least in or about October 2002, defendant SOUTH SHORE maintained a bank account, numbered XX810, at Marquette National Bank in Chicago, Illinois, which defendant SOUTH SHORE, through INDIVIDUAL A, designated as the account for the purpose of receiving electronic transfers of reimbursements for food stamp and EBT food stamp benefit redemptions. INDIVIDUAL A and INDIVIDUAL B were the only authorized signatories, with INDIVIDUAL A designated as the primary account holder, on this bank account.

    u. From on or about March 1, 2002, and continuing through on or about October 3, 2002, SOUTH SHORE redeemed a total of approximately in $726,672 in Link card benefits.

    2. Beginning no later than on or about March 1, 2002, and continuing until on or about October 4, 2002, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

        SOUTH SHORE SUPERMARKET, INC.,

defendant herein, together with others known and unknown, knowingly devised, intended to devise and participated in a scheme to defraud and to obtain money and property from the USDA by means of materially false and fraudulent pretenses, representations, and promises, which scheme is further described below:

    3. It was part of the scheme that on multiple occasions between on or about March 1,

2001 and on or about October 2, 2002, defendant SOUTH SHORE, through its employees, with the knowledge and consent of SOUTH SHORE, knowingly used, and caused to be used, the Link card machine assigned to SOUTH SHORE to process fraudulent Link card transactions in which employees redeemed and caused to be redeemed Link card benefits in exchange for discounted amounts of cash knowing that such exchanges were prohibited under the FSP. SOUTH SHORE's scheme caused a loss to the USDA of at least $196,163.

4. It was further part of the scheme that on or about March 22, 2002, a SOUTH SHORE employee used SOUTH SHORE's authorized Link card machine to debit approximately $60.59 in Program benefits from a beneficiary account in return for approximately $40.00 in U.S. currency.

5. It was further part of the scheme that on or about April 3, 2002, a SOUTH SHORE employee used SOUTH SHORE's authorized Link card machine to debit approximately $35.11 in Program benefits from a beneficiary account in return for approximately $25.00 in U.S. currency.

6. It was further part of the scheme that on or about August 24, 2002, a SOUTH SHORE employee used SOUTH SHORE's authorized Link card machine to debit approximately $603.36, through two debit transactions in the amounts of $312.37 and $290.99, in Program benefits from a benificiary account in return for approximately $300.00 in U.S. currency.

7. It was further part of the scheme that on or about September 25, 2002, a SOUTH SHORE employee used SOUTH SHORE's authorized Link card machine to debit approximately $340.50 in Program benefits from a beneficiary account in return for approximately $23.00 in U.S. currency.

8. It was further part of the scheme that on or about September 25, 2002, a SOUTH SHORE employee used SOUTH SHORE's authorized Link card machine to debit approximately $251.90 in Program benefits from a beneficiary account in return for approximately $140.00 in U.S.

currency.

9. It was further part of the scheme that on or about October 1, 2002, a SOUTH SHORE employee used SOUTH SHORE's authorized Link card machine to debit approximately $240.95 in Program benefits from a beneficiary account in return for approximately $160.00 in U.S. currency.

10. It was further part of the scheme that on or about October 1, 2002, a SOUTH SHORE employee used SOUTH SHORE's authorized Link card machine to debit approximately $382.90 in Program benefits from a beneficiary account in return for approximately $240.00 in U.S. currency.

11. It was further part of the scheme that on or about October 2, 2002, a SOUTH SHORE employee used SOUTH SHORE's authorized Link card machine to debit approximately $496.03 in Program benefits from a beneficiary account in return for U.S. currency.

12. It was further part of the scheme that on or about October 2, 2002, a SOUTH SHORE employee used SOUTH SHORE's authorized Link card machine to debit approximately $458.33 in Program benefits from a beneficiary account in return for U.S. currency.

13. It was further part of the scheme that SOUTH SHORE, through its managers and employees, including, Individuals A and B, and others known and unknown, caused Affiliated Computer Services and its affiliates to wire transfer to the Marquette National Bank account designated by SOUTH SHORE, reimbursements received for fraudulently redeemed Link card benefits.

14. It was further part of the scheme that from on or about March 1, 2002 through October 4, 2002, defendant SOUTH SHORE caused approximately $ $726,672 to be transferred to Marquette National Bank account XX810 in the name of SOUTH SHORE which transfers included reimbursement for Link card benefits fraudulently redeemed. As part of the scheme and in order to have the money placed in SOUTH SHORE's account, SOUTH SHORE, through its employees and

Case 1:07-cr-00869 Document 1 Filed 12/28/2007 Page 9 of 16

managers, including INDIVIDUALS A and B, caused to be transmitted wire communications from Austin, Texas to SOUTH SHORE's bank account in Chicago, Illinois.

15. It was further part of the scheme that defendant SOUTH SHORE misrepresented and concealed and caused to be misrepresented and concealed the purposes of, and the acts done in furtherance of, the scheme in order to avoid detection of the scheme.

16. On or about October 1, 2002, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

SOUTH SHORE SUPERMARKET, INC.,

defendant herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce from Chicago, Illinois, to Austin, Texas, certain signs, signals and sounds, namely: a point of sale Link card request for authorization for the purchase of Electronic Benefit Transfer benefits having a face value of approximately $240.95;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWO

The UNITED STATES ATTORNEY further charges:

1. Paragraphs One through Fifteen of Count One are hereby incorporated by reference as though fully set forth herein.

2. On or about October 1, 2002, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

SOUTH SHORE SUPERMARKET, INC.,

defendant herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce from Chicago, Illinois, to Austin, Texas, certain signs, signals and sounds, namely: a point of sale Link card request for authorization for the purchase of Electronic Benefit Transfer benefits having a face value of approximately $382.90;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT THREE

The UNITED STATES ATTORNEY further charges:

1. Paragraphs One through Fifteen of Count One are hereby incorporated by reference as though fully set forth herein.

2. On or about October 2, 2002, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

SOUTH SHORE SUPERMARKET, INC.,

defendant herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce from Chicago, Illinois, to Austin, Texas, certain signs, signals and sounds, namely: a point of sale Link card request for authorization for the purchase of Electronic Benefit Transfer benefits having a face value of approximately $496.03;

In violation of Title 18, United States Code, Sections 1343 and 2.

## **COUNT FOUR**

The UNITED STATES ATTORNEY further charges:

1. Paragraphs One through Fifteen of Count One are hereby incorporated by reference as though fully set forth herein.

2. On or about October 2, 2002, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

SOUTH SHORE SUPERMARKET, INC.,

defendant herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce from Chicago, Illinois, to Austin, Texas, certain signs, signals and sounds, namely: a point of sale Link card request for authorization for the purchase of Electronic Benefit Transfer benefits having a face value of approximately $458.33;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT FIVE

The UNITED STATES ATTORNEY further charges:

1. Paragraphs One through Fifteen of Count One are hereby incorporated by reference as though fully set forth herein.

2. On or about October 4, 2002, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

SOUTH SHORE SUPERMARKET, INC.,

defendant herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce from Austin, Texas to Chicago, Illinois, certain signs, signals and sounds, namely: an electronic transfer of funds in the amount of approximately $16,868.09 to Marquette National Bank account number XX810 held in the name of SOUTH SHORE SUPERMARKET;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT SIX

The UNITED STATES ATTORNEY further charges:

1. Paragraphs One through Fifteen of Count One are hereby incorporated by reference as though fully set forth herein.

2. On or about October 4, 2002, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

SOUTH SHORE SUPERMARKET, INC.,

defendant herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce from Austin, Texas to Chicago, Illinois, certain signs, signals and sounds, namely: an electronic transfer of funds in the amount of $2,315.66 to Marquette National Bank account number XX810 held in the name of SOUTH SHORE SUPERMARKET;

In violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE ALLEGATION

The UNITED STATES ATTORNEY further charges:

1. The allegations contained in Counts One though Six are hereby realleged and incorporated by reference herein for the purpose of alleging forfeiture pursuant to the provisions of Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

2. As a result of its violations of Title 18, United States Code, Section 1343, as alleged in the foregoing Information,

SOUTH SHORE SUPERMARKET, INC.,

defendant herein, shall forfeit to the United States, pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C) any and all right, title, and interest it may have in any property, real and personal, which constitutes and is derived from proceeds traceable to the offenses.

3. The interests of defendant SOUTH SHORE SUPERMARKET, INC. subject to forfeiture, as the result of their violations of Title 18, United States Code, Section 1343, include but are not limited to:

    i.    $196,163
    ii.    Funds in the amount of $45,228.05 in Marquette National Bank, Chicago, account XX810 held in the name of South Shore Supermarket, Inc.;
    iii.    $1,965 in currency seized from South Shore Supermarket on October 2, 2002.

4. If any of the forfeitable property described above, as a result of any act or omission by the defendant:

    a.    Cannot be located upon the exercise of due diligence;

    b.    Has been transferred or sold to, or deposited with, a third person;

  c.  Has been placed beyond the jurisdiction of the Court;

  d.  Has been substantially diminished in value; or

  e.  Has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28 United States Code, Section 2461(c) to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

_[signature]_
UNITED STATES ATTORNEY